### Gulf, Colorado & Santa Fe Railway Company v. B. F. Garren.

#### No. 1225. Decided June 11, 1903.

**1.—Master and Servant—Known Defects—Promise to Repair—Charge.**

An engineer, discovering a defective step to the engine, attempted, in the presence of the fireman, to fix it, and being unable to do so for want of the proper tool, said, "I'll have it fixed;" afterwards, on the same trip, the fireman was injured through the defect. Held, that, though the case involved the question whether the fireman was relieved from assumption of the risk by a belief that the step had been repaired, it did not present the issue of his relief therefrom by a promise of the master to have it repaired, nor justify a charge submitting that theory. (Texas & N. O. Railway Co. v. Bingle qualified.) (Pp. 613-615.)

**2.—Evidence—Corroborating by Previous Declarations.**

Where the omission of certain facts, relied on by plaintiff for recovery, from his abandoned original petition, was proven to show that their subsequent introduction was an afterthought, his counsel was properly allowed to testify that plaintiff had stated them to him at the outset, and that their omission was by his own oversight. (Pp. 615, 616.)

**3.—Re-Examination—Explanation—Repetition.**

Example of case where explanation of answers given on cross-examination was proper on re-examination and held not to show an effort at undue repetition. (P. 616.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Johnson County.

Garren sued the railway company and had judgment. Defendant appealed, and on affirmance obtained writ of error.

*J. W. Terry* and *Ballinger Mills,* for plaintiff in error.—When a servant knows of a defect in appliances with which he is working, in order to relieve himself from the assumption of the risk on the ground of a promise of his master to repair, he must show that the promise was made by the master or by some one invested, either in fact or by presumption of law, with the power to make such a promise binding on the master. There was no evidence in the plaintiff's behalf that the engineer had such authority and there was much affirmative evidence for the defendant that the engineer had no such authority. The court therefore erred in its charges to the jury on this point, and the special

charge number 11 requested by defendant should have been given. Southern Pac. Co. v. Leash, 2 Texas Civ. App., 68; City of Houston v. Owen, 67 S. W. Rep., 788; Gulf, C. & S. F. Railway Co. v. Brentford, 79 Texas, 619; 20 Am. and Eng. Enc. of Law, 2 ed., 129, and authorities there cited; Albrecht v. Chicago & N. W. Railway Co. (Wis.), 84 N. W. Rep., 884; Ehmcke v. Porter, 45 Minn., 338; Wilson v. W. & St. P. Railway Co. (Minn.), 31 Am. and Eng. R. R. Cases, 246; Nealand v. Railway Co., 173 Mass., 42.

The courts of this State have repeatedly decided that an engineer and fireman are fellow servants. There is certainly no authority in a servant to bind the master by a promise to a fellow servant, unless he is invested with such power by special authority from the master or by the necessary attributes of his position. Nothing of this sort being pres-. ent in this case, the engineer was without authority to bind the master by such a promise. The alleged promise was made in the Indian Territory; hence the Texas fellow servant statute can have no application. Gulf, C. & S. F. Railway Co. v. Blohn, 73 Texas, 640; Campbell v. Cook, 86 Texas, 630; Railway Co. v. Welch, 72 Texas, 298; Corona v. Railway Co., 17 S. W. Rep., 384; Railway Co. v. Johnson, 83 Texas, 628; Railway Co. v. Watts, 63 Texas, 549; Railway Co. v. Harrington, 62 Texas, 597; Railway Co. v. Rider, 62 Texas, 267; Dallas v. Railway Co., 61 Texas, 196; Albrecht v. Chicago & N. W. Railway Co., 84 N. W. Rep., 884; Wilson v. Railway Co., 31 Am. and Eng. R. R. Cases, 246; Railway Co. v. Poirier, 167 U. S., 48; Martin v. Railway Co., 166 U. S., 399; Oakes v. Mase, 165 U. S., 363; Railway Co. v. Keegan, 160 U. S., 259; Railway Co. v. Hambly, 154 U. S., 349; Randall v. Railway Co., 109 U. S., 478; Q. S. Co. v. Merchant, 133 U. S., 375; Railway Co. v. Peterson, 162 U. S., 346; Railway Co. v. Charless, 162 U. S., 359; Price v. Detroit, etc., Railway Co., 145 U. S., 651.

The charge of the court assumed that the engineer had authority to bind appellant by such a promise. Such an assumption is error, as a court in its charge is not warranted in assuming a representative capacity in this respect, and the charges complained of are on the weight of the evidence. Gulf, C. & S. F. Railway Co. v. Brentford, 79 Texas, 626; Railway Co. v. Farmer, 73 Texas, 85; Robinson v. Railway Co., 46 Texas, 550; D. S. & F. Co. v. Bell, 29 S. W. Rep., 796; Texas L. Co. v. Watson, 3 Texas Civ. App., 233; Kelley v. Collier, 32 S. W. Rep., 428, 11 Texas Civ. App., 353; Childress v. Smith, 37 S. W. Rep., 1076; Wharton on Neg., 220; McGowan v. Railway Co., 61 Mo., 532; Albrecht v. Chicago & N. W. Railway Co. (Wis.), 84 N. W. Rep., 884.

A servant who knows of a dangerous condition in appliances used by him assumes the risk thereof if he continues in the employment. When he knows, or ought to know, that a promise to repair will not be performed and yet remains in the service, he can not be regarded as acting or relying upon the promise. The uncontradicted evidence showing that plaintiff knew of the defect before leaving Purcell, and that he knew, or ought to have known, that such defect would not be remedied until the end

of the run, he knew, or ought to have known, that the promise of the engineer, if it can be held that there was any promise, would not be fulfilled until Cleburne was reached, and under the law it can not be held that he relied on the promise or was induced thereby to remain in the employment. Where, as in this case, the agreement is not to be performed until a certain time, the agreement or promise is not operative until that time arrives, because during the time which intervenes between the making of the promise and the time when the promise is to be performed the servant has no reason to expect the defect remedied. Hillje v. Hettich, 95 Texas, 321; Railway Co. v. Bingle, 9 Texas Civ. App., 322; Gulf, C. & S. F. Railway Co. v. Brentford, 79 Texas, 619; So. Pac. Co. v. Leash, 2 Texas Civ. App., 68; Standard Oil Co. v. Helmick, 148 Ind., 460; McFarlan Carriage Co. v. Potter, 52 N. E. Rep., 211; Webber v. Piper, 38 Hun, 353; Marquette, etc., Railway Co. v. Spear, 44 Mich., 169; 20 Am. and Eng. Enc. of Law, 2 ed., 129, note 3, par. 4; Whalan v. Whipple (R. I.), 13 Atl. Rep., 107.

The promise of the master which will relieve the servant from the assumption of the risk from a known defect must have as its consideration that the servant will continue to use the defective implement. The act of the engineer in this case in turning the step under the engine showed that it was contemplated that the defective step should not be used by anyone, and therefore was not such a promise as, under the authorities, will relieve the appellee from being held to have assumed the risk.

The mere statement of the engineer that he would have the step fixed could justify no inference other than that he would have it fixed at the place where such repairs were made according to the usual custom of the company's business, which the undisputed evidence showed to be at Cleburne. Unless the engineer expressly promised to have the step repaired at Gainesville, the fact that the company's business was conducted in its usual way, could not in any way be considered as an act of negligence, and special charge number 13 should have been given, and the promise should have been withdrawn from the consideration of the jury.

The so-called promise of the engineer was wholly indefinite as to time, and in such event it must be held that it related to the time when in the ordinary course of defendant's business, and when, according to the manner in which said business was usually conducted, such a repair was customarily made. This being so, the plaintiff can not, in law, be presumed to have been induced thereby to make the trip from Purcell to Cleburne.

The theory on which a promise to repair is held to relieve the servant from assumption of the risk from a known defect is, that by the promise the servant is induced to continue in the employment. This inducement is a necessary part of the case which such a plaintiff must make out. One of the grounds on which defendant resisted the recovery was that the plaintiff was not induced to remain in its employment

by the so-called promise. The charges requested thus presented one of the vital issues and should have been given. That the promise must induce plaintiff to remain see So. Pac. Co. v. Leash, 2 Texas Civ. App., 68; Gulf, C. & S. F. Railway Co. v. Brentford, 79 Texas, 619; 20 Am. and Eng. Enc. of Law, 2 ed., 128-130, and authorities there cited. That a defendant is entitled to have every theory of the case submitted, see Smith v. Bank, 1 Texas Civ. App., 115; Jones v. Rex, 31 S. W. Rep., 1076; Biering v. Bank, 69 Texas, 602; Railway Co. v. Robinson, 73 Texas, 277; Railway Co. v. Burnett, 80 Texas, 536.

The promise of a master to repair a defective machine used in his business and known to both to be dangerous will not relieve the servant from the ordinary result of contributory negligence on his own part. Gulf, C. & S. F. Railway Co. v. Brentford, 79 Texas, 619; Texas & N. O. Railway Co. v. Bingle, 9 Texas Civ. App., 325; Texas & P. Railway Co. v. Bryant, 8 Texas Civ. App., 134; Railway Co. v. Watson, 114 Ind., 20; Miller v. Mining Co., 18 Utah, 358; Mangum v. Bullion Mining Co., 15 Utah, 534; Phillips v. Michael, 11 Ind. App., 672; Albrecht v. Railway Co., 84 N. W. Rep., 886.

Where the plaintiff in an action has testified in his own behalf, and contradictory statements have been proven against him, it is not competent for him to show that at other times he had made statements substantially in accordance with his testimony on the trial. Conrad v. Griffey, 11 How. (U. S.), 480; United States v. Holmes, 1 Cliff. (U. S.), 98; Loomis v. Railway Co., 159 Mass., 39; Com. v. Jenkins, 10 Gray (Mass.), 485; Com. v. James, 99 Mass., 438; Fallin v. State, 83 Ala., 7; Nichols v. Stewart, 20 Ala., 358; Adams v. Thornton, 82 Ala., 260; McKelton v. State, 86 Ala., 594; Reed v. Spaulding, 42 N. H., 114; Riney v. Vanlandingham, 9 Mo., 816; Connor v. People, 18 Colo., 375; Davis v. Graham, 2 Colo. App., 210; Dufresne v. Weise, 46 Wis., 298; Dudley v. Bolles, 24 Wend., 465; Robb v. Hackley, 23 Wend., 50; Butler v. Truslow, 55 Barb., 293; Smith v. Stickney, 17 Barb., 489; People v. Doyell, 48 Cal., 85; Davis v. Kirksey, 2 Rich. (S. C.), 176; Stolp v. Blair, 68 Ill., 541; State v. Vincent, 24 Iowa, 570.

Although the old rule (now obsolete) was that consistent statements of a witness could be shown when contradictory statements by him had been introduced for the purpose of impeaching him, we submit that no court has held that such consistent statements can be introduced when made subsequent to the inconsistent statement charged to the witness. Mr. Stanford's testimony on this point was therefore clearly inadmissible. Conrad v. Griffey, 11 How. (U. S.), 491; Ellicott v. Pearl, 10 Pet. (U. S.), 438; Queener v. Morrow, 1 Coldw. (Tenn.), 123.

The very fact that the statement was made to plaintiff's attorney was, under the circumstances of this case, sufficient to render it inadmissible.

The object of a re-examination is "to explain or qualify the witness' statements made on cross-examination. Counsel has a right, upon re-

examination, to ask all questions which may be proper to draw forth an explanation of the sense and meaning of the expressions used by the witness on cross-examination."

Defendant's bills of exception numbers 5 and 6 show that while the witness, Thomas Paxton, was on the stand as a witness for the defendant, he was asked by counsel for plaintiff on cross-examination the following question: "Is it the duty of an engineer—suppose he is at Purcell—isn't it his duty to telegraph down there and some one to fix it?" (meaning a defect about the engine). To which the witness answered: "Yes, sir; he is supposed to have it fixed if he understood that it was such a defect as would likely injure some one."

. On re-direct examination counsel for defendant asked the witness the following question: "What do you mean by saying 'if the engineer so understood it'?" To which he replied: "If the engineer considered that it was dangerous, I mean he would undoubtedly take steps to have it repaired."

Thereupon counsel for defendant propounded the following question to said witness, Thomas Paxton: "Suppose as to this particular defect that the fireman's attention is called to it and it is put under securely, state to the jury whether or not as applied to the fact it would be the duty of the engineer to telegraph to Gainesville to have some one to come down there and fix that step?" To which question counsel for plaintiff stated to the court, "I object to that," and the objection was sustained by the court. This was followed by this question, propounded by counsel for defendant: "State whether or not it was such a repair that under the rules and practice and custom of the company was made or required to be made at Gainesville." To which question and the testimony sought to be elicited thereby, plaintiff objected and the objection was sustained by the court. The witness would have answered, if permitted by the court, that such a defect as the one in the step in question was not such a one as under the rules, practice and custom of the defendant company was either made or required to be made at Gainesville, and that as applied to the facts of this particular defect, it having been called to the attention of the fireman, and being turned under the engine, it was not the duty of the engineer to telegraph to Gainesville and to have some one come down to the train and fix the step. The court refused to permit the witness to testify to said facts, and excluded said testimony from the jury on the objection of plaintiff. Thereupon the above questions were followed by this question: "State by what you said awhile ago—'if the engineer so considered it to be dangerous'—whether you meant to say that this particular defect was one that he was required to report and have fixed at Gainesville?" To which question and the answer sought to be elicited thereby plaintiff objected. To this last question the witness would have answered, if permitted by the court, that he did not mean to say that the particular defect alleged in this case was such a one as the engineer was required

to report, and have fixed at Gainesville. To all of which matters and rulings of the court as above stated defendant excepted.

The court allowed and approved the bills with the following explanations: That the questions mentioned in bill number 5 were not allowed to be answered by the witness but no statement was made by the attorneys for defendant to the court as to what manner the witness would have answered the questions, and that the question as to the practice and custom of the company in making such repairs at Gainesville was excluded because the witness in his direct examination had testified fully on that one point.

*S. C. Padelford* and *Stanford & Watkins,* for defendant in error.— It was the duty of the defendant to have furnished to the plaintiff reasonably safe and suitable approaches or steps to said engine upon which plaintiff was working, and to use ordinary care to keep the same in a reasonably safe and good repair for the transaction of its business, so that the plaintiff could with reasonable safety get off and on same, in the discharge of the duties which he owed to the defendant. In order to keep said approaches and steps to said engine in good repair, the defendant must have delegated this duty to an employe, and such employe to whom the defendant had delegated this duty to examine and repair or have repaired said approaches and steps would be the vice-principal of the defendant, and the negligence of said employe in failing to perform his duty would be negligence of the defendant. The uncontradicted evidence showed that this duty to examine and repair, or have repaired said step was delegated by the defendant to the engineer, and that it was the duty of the engineer to examine and repair or have repaired said step on said engine, and the promise or action of said engineer in regard to said repairs would be the action and promise of the defendant. 1 Shearm. & Redf. on Neg., sec. 215; Louisville & N. Railway Co. v. Kenley, 21 S. W. Rep., 326; Pieart v. Railway Co., 82 Iowa, 148; Barney Dumping Boat Co. v. Clark, 112 Fed. Rep., 921; Homestake Mining Co. v. Fullerton, 69 Fed. Rep., 928; Railway Co. v. Bingle, 9 Texas Civ. App., 322.

If the defendant had delegated to the engineer the duty to repair or have repaired such defective step, he was the representative of the defendant in regard to this duty, and under the common law was not a fellow servant with plaintiff in regard to this duty to repair or have such defect repaired, and also under the fellow servant statute of this State he was not a fellow servant with the plaintiff. The decision of this case is governed by the laws of this State. Railway Co. v. Bingle, 16 Texas Civ. App., 653; Railway Co. v. Kernan, 78 Texas, 297; Telegraph Co. v. Blake, 68 S. W. Rep., 526; Telegraph Co. v. Lovely, 52 S. W. Rep., 563; Railway Co. v. Kelton, 66 S. W. Rep., 887, 28 Texas Civ. App., 137.

It is negligence for a master not to use ordinary care to keep in a reasonably safe repair the appliances with which the employe has to

labor, and the employe does not assume the risk arising from the negligence of the master in permitting defects in such appliances, unless the employe has knowledge of such defect at the time of the injury; hence a complaint of an employe for personal injuries, alleging that the employer promised to repair the defect, of which plaintiff knew, and thereafter believing that the repairs had been made, plaintiff was injured by such defect, does not admit but denies knowledge of the defect at the time of the accident, and counts solely on negligence of defendant in failing to repair a defect unknown to plaintiff at time of injury; and . the law governing assumed risk of the employe on account of notice of defects at the time of the accident, and the waiver of such assumed risk by the employer on account of a promise to repair, has no applicability. Missouri, K. & T. Railway Co. v. Nordell, 50 S. W. Rep., 601; 20 Texas Civ. App., 362; Kane v. N. C. Railway Co., 128 U. S., 61; Kerrigan v. Chicago M. & St. P. Railway Co., 90 N. W. Rep., 976.

Where a servant knew of a defect which the master promised to repair, the servant relying upon the promise, remained in said employment, believing that the master had complied with the promise and without notice or knowledge that the defect had not been repaired, and was injured by reason of the defect, the master would be liable. See statement under counter propositions above, and statement of the nature and result of the suit. Railway Co. v. Nordell, 50 S. W. Rep., 601, 20 Texas Civ. App., 362; Kerrigan v. Railway Co., 90 N. W. Rep., 976.

The sixth and seventh paragraphs in the charge, which are complained of, do not assume that the engineer had authority to bind appellant by a promise to repair.

The uncontradicted evidence in this case showed that it was the duty of the engineer to make or report and have made said small repair to the step on the engine; yet if this court holds that under such evidence the said engineer could not bind appellant by a promise to repair, still, under the issue as made by the pleadings and evidence, it would not be necessary for the jury to find that the said engineer had such authority to make said promise in order to find for plaintiff. If the plaintiff, from any cause, did not believe and know at the time of the injury that said step was defective, he would not in law assume the risk of defendant's negligence in permitting said defect. If any person, whether authorized or not to bind the defendant by a promise to repair, led plaintiff to believe that the said repair would be made, and that the plaintiff relied upon such promise and believed that said repair had been made at the time of the injury, he would not at said time know of such defect; and hence, because he did not know of said defect at the time of the injury, the law of assumed risk would not apply, and the fact which led plaintiff to believe that the said step had been repaired and was not defective at the time of the injury would not be material, the material fact being whether or not plaintiff knew of said defect at the time of the injury. Missouri, K. & T. Railway Co. v. Nordell, 50 S. W. Rep., 601, 20 Texas Civ. App., 362; Northern P. Railway Co. v.

Babcock, 154 U. S., 202; Kerrigan v. Railway Co., 90 N. W. Rep., 976-980.

A servant who does not know of a dangerous condition in appliances used by him at the time of the injury, does not assume the risk thereof. The uncontradicted evidence showed that the plaintiff relied on the promise of the engineer to repair said defective step, and believed that same had been repaired prior to his injury, and hence did not know of the defect at the time of the injury, and did not assume the risk of said defect. The promise of the engineer was not that it was not to be performed until a certain time, but was that it should be performed as soon as it could be done by the use of ordinary diligence on the part of the defendant, which was at Gainesville. Railway Co. v. Nordell, 50 S. W. Rep., 601, 20 Texas Civ. App., 362; Railway Co. v. Barbeach, 154 U. S.; Kerrigan v. Railway Co., 90 N. W. Rep., 976-980.

The servant is not required to make any examination of the appliances but may presume that the master has performed its duty in using reasonable diligence to make same. And the sixth clause of the court's charge is a correct enunciation of this principle of law, and is in accordance with the decisions of the Supreme Court of this State. Railway Co. v. Nordell, 50 S. W. Rep., 602, 20 Texas Civ. App., 362; Railway Co. v. Bingle, 91 Texas, 287.

The court did not err in sustaining exceptions to the questions propounded to the witnesses Paxton and Stout by appellant's counsel on re-examination as complained of in the above assignment. A party who introduces a witness has no right to have that witness restate on re-examination facts testified to by said witness on direct examination, or on re-examination, to re-enter upon the subjects inquired of on the direct examination. 3 Jones on Ev., 1924, sec. 876; McCooe v. Railway Co., 33 N. E. Rep., 133; Winslow v. Covert, 52 Ill. App., 63.

When a fact testified to by a party to a suit is charged by the opposite party to be an afterthought, that the said fact was never thought of or mentioned by the party as a basis for the suit until long after the institution of the suit, and that the same was a fabrication, and evidence is introduced by the said party to establish this theory, then the fact that the plaintiff did mention this fact at issue, charged as a fabrication to any person prior to the alleged time of fabrication, is admissible as original evidence and is competent to rebut said evidence introduced by said party charging the fabrication.

Since it was sought to be shown by the defendant on the trial of this case that the fact that the engineer promised to repair said step at Gainesville was an afterthought and a fabrication by the plaintiff, and that the same was not thought of or fabricated until the filing of the supplemental petition in this case, and that the plaintiff had never mentioned to anyone this fact until after the institution of this suit; and since defendant sought to prove this alleged fabrication by the fact that the promise was not mentioned in certain statements he made to certain employes of the defendant prior to the suit, and that the said

promise was not alleged in the original petition on file herein, the plaintiff in rebuttal could show that the plaintiff did state to his attorneys said fact of said promise prior to the filing of said petition, and the court did not err in admitting said testimony. Stephens v. State, 26 S. W. Rep., 728; English v. State, 30 S. W. Rep., 233; Railway Co. y. Johnson, 37 S. W. Rep., 771; Railway Co. v. Hawk, 5 Texas Ct. Rep., 679-681, 69 S. W. Rep., 1037; People v. Doyell, 48 Cal., 85; State v. Vincent, 24 Iowa, 570; Railway Co. v. Hall, 43 S. W. Rep., 25, 17 Texas Civ. App., 45.

WILLIAMS, Associate Justice.—Defendant in error was a fireman on one of the passenger engines of plaintiff in error and was hurt while attempting to get upon the engine at Saginaw, forty or fifty miles south of Gainesville, by the turning of a step, which was in a loose and dangerous condition. The loose condition of the step had been brought to his attention earlier during the same trip at Purcell, I. T., by the engineer, who, according to the testimony of defendant in error, said: "Here is a loose step; hand me the wrench." Defendant in error further testified, that after trying to tighten the step, the engineer found he could not do so with the only wrench at hand, and turned it under the side of the engine, saying: "I'll have it fixed." This is all that took place at that time. At Gainesville, which is between Purcell and Saginaw, the company had shops and car inspectors and repairers, and the defect could have been remedied in a few minutes with the proper wrench. There is a dispute as to the character of defects in engines and cars which were usually repaired at Gainesville into the details of which we need not enter. There is evidence to the effect that when the train stopped at Gainesville there were inspectors and repairers present with whom the engineer was seen by defendant in error in conversation. Defendant in error left the engine and was absent ten or twenty minutes to get his supper and on his return the train proceeded southward. When it reached Saginaw defendant in error descended from the engine to perform a duty and in attempting to ascend again was hurt as stated. One of his contentions is that he believed the step had been fixed at Gainesville and was in proper position and condition for use. The evidence was not conclusive on this point, but was such as to make it necessary for the jury to determine whether or not he in fact acted on this belief, and whether or not he was justified by the circumstances in so believing and acting.

The charge of the court, among other things, contained the following:

"6. The servant by entering the service of the master assumes all the ordinary risk incident to the business but not those arising from the master's neglect if the master should be guilty of negligence. It is the duty of the master to exercise ordinary care to furnish the servant machinery and appliances, and the servant has the right to rely upon the presumption that the master has done his duty in this regard; but if he learns that the appliances furnished are defective he assumes the

risk incident to that condition of affairs, unless the master is informed of such defects and promises the servant to remedy the defects if any. In this latter event, so long as the servant has reasonable grounds to expect and does expect that the master will fulfill his promise, the servant does not by continuing in the employment assume the additional risk arising from the master's neglect. If the servant then be injured, he may recover, provided that it be found that a man of ordinary prudence under all the circumstances would have encountered the danger by continuing in the service, and if the master has promised to repair such defect, if any, the servant may presume that the master has complied with the promise, and the servant is not required to inspect the appliance before using it to ascertain whether the repairs have been made, unless there is something in the condition of the appliance which would cause an ordinarily prudent person to make an examination of said machinery.

"7. If you find from the evidence that it was the duty of the engineer on said engine upon which the plaintiff was working at the time of his injury to have any defects on said engine, if there were, repaired, then the promise by said engineer to make repairs of said defects would be the promise of the defendant."

This relieved the servant from the effect of an assumption of risk, arising from knowledge of the defect, by force of a promise of the master to repair, assuming that there was evidence of such a promise as would give application to this doctrine. The remark of the engineer can not be so construed. The true doctrine relates only to promises or assurances made by the master to the servant, upon discovery of defects in tools or appliances, to remove the objection of the servant to using them and to induce him to continue in the service. Lewis v. New York & N. E. Railway Co., 10 Law. Rep. Ann., 513; Sweeney v. Envelope Co., 101 N. Y., 520; Bodwell v. Manufacturing Co., 47 Atl. Rep., 613. There is nothing of the nature of such a promise in the casual remark of the engineer to the defendant in error, and the doctrine laid down in the case of Texas & New Orleans Railway Company v. Bingle, 91 Texas, 287, and like cases, has no application. There being no such facts, the question whether or not a promise otherwise filling the requirements of the rule, made by the engineer, who had no power to employ and discharge defendant or other servants, would be treated as that of the master, does not arise. In the second appeal of the Bingle case, there was an expression in the opinion of the Court of Civil Appeals concerning the effect of the promise of the engineer in that case which probably led the trial court in this case to treat the promise of the engineer as that of the company. The facts of that case relating to the question, which are not fully stated in any of the reports, were very different from those here in question; and the point now made was not passed on by this court in refusing a writ of error and probably not by the Court of Civil Appeals. As the question is not now involved, we deem it unnecessary to point out the differences between the two cases,

or to pursue the subject further than to say that we do not regard the decision referred to as authority for the proposition that a promise to a fireman made by an engineer in charge of a train, with no power of employing and discharging servants, is to be imputed to the master. It is not to be inferred that the statement of the engineer is not admissible as evidence upon the true issues in the case. Although a servant may at one time have known of the existence of a defect, he may not know of it at the time he undertakes to use the appliance, and circumstances may justify him in believing that the defective condition has been remedied. Some of the evidence tended to raise that question, and to it the statement by the engineer that he would have the step fixed was relevant; and the circumstances taken together raised the question whether or not the defendant in error, when he used the step, knew or should have known that it was still in the dangerous condition, or believed that it had been repaired and was justified in such belief; and whether or not he was so justified would depend upon the inquiry whether he judged and acted upon the facts with ordinary prudence. Northern P. Railway Co. v. Babcock, 154 U. S., 200. It was contended in the argument that this view of the law was embodied in the charge and that, under it, the facts justified the recovery. It may be true that the charge authorized a recovery upon this theory, but it also instructed as to the effect of a promise by the master, giving to it the weight indicated by the passages which we have quoted, and it can not be said that those instructions did not influence the verdict. Conflicting theories were thus embodied in the charge, under one of which the servant must have been ignorant of the condition of the step when he used it, while under the other he may have known it, but because of the promise, is not held to an assumption of the risk.

During the trial defendant in error was cross-examined concerning statements which he had made of the facts of the accident in which he did not mention the so-called promise of the engineer; and, also, the fact was developed that in his original petition he had made no allegation of that fact, the position of counsel for plaintiff in error being that the evidence of such promise was fabricated as an afterthought. In rebuttal, the attorney who drew the petition was allowed to state that his client, in his statement of the case, did include the promise as he stated it on the stand. One of the assignments questions the ruling admitting this testimony. In the case of Insurance Co. v. Eastman, 95 Texas, 34, this court had occasion to examine the question as to the admissibility of statements by a party to the suit corroborative of his evidence given on the stand, when such evidence has been contradicted by proof of contrary statements made elsewhere, and the rules generally obtaining were stated in the opinion of Chief Justice Gaines. How far the rules laid down might be applicable, had there been no attempt to inferentially contradict the witness by the absence of mention in the petition of the fact in question, we are not called upon to consider. The evidence objected to tended to show that such omission was not that of

the defendant in error, but of his counsel, and to rebut the inference contended for, and was therefore admissible. The question as to the propriety of the refusal of the court to permit counsel for plaintiff in error, on re-examination of the witness Paxton, to draw from him an explanation of his answer given in cross-examination, will not probably arise again; but, as the record shows the matter, we think the question should have been allowed. It appears from the statement of the facts that there was occasion for the explanation asked and it does not appear that there was an effort at undue repetition of the same statement.

*Reversed and remanded.*